## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| JANAE EDDINGS | ) | |
| and FRANCHON WILKINS, | ) | |
| | ) | **Civil Action No: 3:20-cv-809** |
| **Plaintiffs,** | ) | |
| v. | ) | |
| | ) | |
| T-MOBILE, USA, INC. | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiffs Janae Eddings and Franchon Wilkins ("Eddings" and "Wilkins" or, collectively, "Plaintiffs"), for their Complaint against T-Mobile USA, Inc. ("T-Mobile" or "Defendant") state as follows:

## NATURE OF ACTION

1.     Plaintiffs bring this action under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (hereinafter the "ADA"). Plaintiffs each requested leave for medical reasons, Eddings for health issues related to her disability, and Wilkins for health issues related to her disability and her pregnancy and miscarriage. Separately, Eddings also asserts claims under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611, *et seq.* ("FMLA"), in that Defendant terminated her employment in violation of the FMLA. Separately, Wilkins also asserts claims for pregnancy discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). T-Mobile's employee Nikisha Tolliver ("Tolliver"),

1

whose job title is "Employee Success Advisor," terminated Eddings on March 12, 2019, and terminated Wilkins on April 10, 2019.

2.     Both Plaintiffs seek declaratory judgment, injunctive relief, back pay, benefits, compensatory and punitive damages, reasonable attorney's fees and costs for ADA violations. Separately, Eddings also seeks declaratory judgment, injunctive relief, back pay, benefits, liquidated damages, reasonable attorney's fees and costs for FMLA violations. Separately, Wilkins also seeks declaratory judgment, injunctive relief, back pay, benefits, compensatory and punitive damages, reasonable attorney's fees and costs for Title VII violations.

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 42 U.S.C. § 12117(a), 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5 because Plaintiffs bring claims under the ADA, the FMLA, and Title VII. The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4.     This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b)(1) and (b)(2) and 29 U.S.C. § 1132(e)(2). The actions complained of took place in this judicial district; evidence and employment records relevant to the allegations are maintained in this judicial district; and the Defendant is present and regularly conduct affairs in this judicial district.

5.     Plaintiffs have exhausted all necessary administrative prerequisites. Each Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")  within 300 days of her termination, and each Plaintiff received a right-to-sue letter from the EEOC on or about July 21, 2020. Plaintiffs have filed their ADA and Title VII claims within ninety (90) days of their receipt of a right-to-sue letter from the EEOC.

## PARTIES

6.     Eddings is a female resident of Richmond, Virginia.  At the time of her termination in March of 2019, Eddings was 32 years old. She has an enlarged heart and suffers from high blood pressure, anxiety, and depression. At all times relevant to the matters alleged herein, Eddings was an eligible employee within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4). At all times relevant to this Complaint, Eddings was a "qualified individual" with a disability within the meaning of the ADA. At the time of her unlawful termination from T-Mobile, Eddings had been employed by T-Mobile for at least 12 months and had been employed for at least 1,250 hours of service during the twelve-month period immediately preceding the commencement of her leave.  At all times pertinent hereto, T-Mobile employed more than 50 employees at Plaintiffs' worksite, and the total number of employees employed by T-Mobile within 75 miles of that worksite was more than 50.

7.     Wilkins is a female resident of Midlothian, Virginia.  At the time of her termination in April of 2019, Wilkins was 30 years old. Wilkins

3

miscarried in December of 2018 which caused her to suffer from anxiety and depression. At all times relevant to the matters alleged herein, Wilkins was an eligible employee within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4). At all times relevant to the matters alleged herein, Wilkins was an employee within the meaning of Title VII pursuant to 42 U.S.C. § 2000e(f). At all times relevant to this Complaint, Wilkins was a "qualified individual" with a disability within the meaning of the ADA.

8.      T-Mobile is a Delaware corporation that provides wireless telephone and data communication services to millions of customers. As of the end of the second quarter of 2020, T-Mobile had 98.3 million customers and was the second-largest wireless carrier in the United States. T-Mobile has over 52,000 employees in the U.S. and does business in Richmond, Virginia.  T-Mobile is an "employer" as defined in 42 U.S.C. § 12111(5)(A) and is subject to the provisions of the ADA. At all times pertinent hereto, T-Mobile was an "employer" within the meaning of 42 U.S.C. § 2000(b) and was subject to the provisions of Title VII.   At all times pertinent hereto, T-Mobile was an "employer" within the meaning of 29 U.S.C. § 2611(4)(A) and was subject to the provisions of the FMLA.  At all times pertinent hereto, T-Mobile was an employer engaged in an industry affecting commerce with more than 50 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year.

## FACTS

### Nikisha Tolliver's Role as "Employee Success Advisor"

9.      T-Mobile employs Nikisha Tolliver ("Tolliver") in the position of "Employee Success Advisor."

10.     Tolliver gets involved when T-Mobile becomes aware of an employee's health issues that necessitate a leave of absence.

11.     In the summer of 2018, Lawrence K. M., an employee at T-Mobile's Richmond call center, needed eye surgery because of complications related to his diabetes. Mr. M. requested and received short-term disability for one month. He later requested an accommodation that he not work the nightshift, since his impaired vision made it impossible for him to drive at night. Even though his supervisor was willing to accommodate him, Tolliver refused, telling him that T-Mobile had no obligation to assist him with his "transportation problems".

12.     Frustrated, Mr. M. resigned in February of 2019.

13.     Another employee at T-Mobile's Richmond call center, Sade W., was involved in an automobile accident and, subsequently, suffered a stroke at age 32.

14.     Following her accident, stroke, and medical leave, T-Mobile assigned Tolliver to be Ms. W's "Employee Success Advisor." In that role, Tolliver repeatedly harangued Ms. W. for medical records.

15.     After months of repeated requests for medical records by Broadspire, T-Mobile's short-term disability administrator, and Tolliver, T-Mobile terminated Ms. W. on or about December 19, 2019.

**<u>Janae Eddings</u>**

16.     Eddings began her employment with T-Mobile on March 6, 2018 as a Customer Service Representative at T-Mobile's call center in the County of Henrico, Virginia.

17.     Eddings enjoyed her job and was a top performer.

18.     Throughout her employment, Eddings never received any write-ups.

19.     On July 11, 2018, Eddings submitted paperwork for intermittent medical leave due to her heart condition.  The intermittent leave was granted on an as-needed basis.

20.     On January 16, 2019, Eddings again requested medical leave due to depression and anxiety and, secondarily, due to chest pain.

21.     Eddings' medical leave was approved from January 16, 2019 through February 7, 2019.

22.     Eddings returned to her physician on February 6, 2019, and her doctor resubmitted a request for medical leave until March 10, 2019 to T-Mobile.

23.     T-Mobile approved medical leave to Eddings until March 10, 2019 under its short-term disability plan.

24.     T-Mobile assigned Tolliver to be Eddings' "Employee Success Advisor."

25.     On February 25, 2019 Eddings received an email from Tolliver, stating that Eddings needed to contact her immediately or T-Mobile would view Eddings' silence as a voluntary resignation.

26.     Eddings called Tolliver and let her know that she had scheduled a follow-up appointment with her doctor for March 8, 2019, two days before Eddings' current medical leave was set to expire.

27.     Tolliver instructed Eddings to submit an update on her medical condition every two weeks.

28.     Tolliver assured Eddings that T-Mobile would cooperate with her because Eddings had kept in communication with T-Mobile.

29.     Eddings saw her physician again on March 7, 2019.

30.     Eddings' physician concluded that her medical leave should be extended through the end of July 2019.

31.     Eddings immediately sent an email to Tolliver and informed her that her physician would send medical forms to Broadspire.

32.     Eddings' physician sent an update by fax to Broadspire, as required, on March 8, 2019 and again on March 12, 2019 because Broadspire stated that it had not received the March 8th facsimile.

33.     On March 12, 2019, T-Mobile fired Eddington.

34.     Eddings immediately called Tolliver who told her that Broadspire and T-Mobile had not received any medical information from Eddings' physician. Tolliver repeated that because Eddings had not returned to work, T-Mobile was terminating her employment.

35.     Subsequently, T-Mobile lied to the EEOC about its reasons for Eddings' termination: In its position papers, T-Mobile stated, "When Ms. Eddings[] … was expected to return to work on January 3, 2019, she did not return to work and requested a continuous leave of absence until February 20, 2019." This statement contains numerous lies. Eddings requested and received intermittent leave for January 3 and 4, 2019. Eddings did work 35 hours in the pay period ending January 12, 2019.

36.     Eddings worked an additional 24.5 hours in the pay period ending January 26, 2019.

37.     Eddings' last day at work was January 18, 2019.

38.     T-Mobile's explanation was pretext, designed to hide the true, unlawful reason for Wilkins' termination. Defendant terminated Eddings because of her medical issues, and her request for medical leave, in violation of the ADA and the FMLA.

39.     As a result of Defendant's unlawful action, Eddings lost her job and income, and she lost her health benefits.

40.    Defendant's decision to terminate Eddings was made in willful, blatant and intentional disregard of and in violation of Eddings' rights under the ADA and the FMLA.

**Franchon Wilkins**

41.    Wilkins began her employment with T-Mobile on August 7, 2018 as a Customer Service Representative at T-Mobile's call center in the County of Henrico, Virginia.

42.    Wilkins enjoyed her job and was a strong performer.

43.    Throughout 2018 and until February 5, 2019, Wilkins was consistently in good standing at T-Mobile. T-Mobile employee who are "Not In Good Standing" are ineligible for promotions, education assistance, and national recognition programs, as well as possibly internal transfers, annual bonus allocation, and compensation increases.

44.    Wilkins' work schedule was Monday, Tuesday, Thursday and Friday from 9 a.m. to 8 p.m.

45.    Not long after Wilkins was hired by T-Mobile, she discovered that she was pregnant and immediately told her manager.

46.    Wilkins was excited about the pregnancy.

47.    Not long after Wilkins discovered that she was pregnant she began having severe abdominal pain, which caused her to miss work.

48.    At the end of November Wilkins was working 11-hour days and her abdominal pain was getting worse.

49.     On December 9, 2018 Wilkins miscarried and lost her baby.

50.     She requested medical leave for one month until January 9, 2019.

51.     T-Mobile approved her initial Leave of Absence.

52.     When Wilkins returned to work, she was suffering from depression, as well as a painful cyst she had developed.

53.     Wilkins was diagnosed with depression related to the miscarriage and was seeing her therapist twice a week.

54.     Wilkins' physician filled out T-Mobile's medical forms, requesting intermittent leave from December 21, 2018 through March 8, 2019.

55.     Wilkins disclosed to T-Mobile's Human Resources department her diagnosis of spontaneous miscarriage, postpartum depression, and Bartholin's/labial abscess. Her physician informed T-Mobile that Wilkins could return to work without any restrictions on March 9, 2019.

56.     Wilkins' physician also informed T-Mobile that Wilkins' medical condition substantially limited genitourinary and sensory body functions and that Wilkins was unable to engage in prolonged sitting.

57.     After Wilkins requested intermittent medical leave due to her terminated pregnancy and her depression, T-Mobile assigned Tolliver to be Wilkins' "Employee Success Advisor."

58.     Tolliver immediately questioned Wilkins about her request for intermittent medical leave.

59.     Tolliver requested that Wilkins' physician resend her notes to Broadspire.

60.     On March 8, 2019, Broadspire told Wilkins that her request for intermittent medical leave was denied.

61.     On March 18, 2019, Tolliver told Wilkins that her request for intermittent medical leave had been denied.

62.     On March 20, 2019, Broadspire told Wilkins once again that her request for intermittent medical leave was denied. Broadspire suggested that Wilkins' doctor fill out new forms to request intermittent medical leave.

63.     On March 25, 2019, Broadspire told Wilkins yet again that her request for intermittent medical leave was denied.

64.     Wilkins was in good standing before her January 11, 2019 request for intermittent leave. From January 11, 2019, to January 28, 2019, Wilkins submitted and resubmitted additional requests for leave and more supporting documentation. On February 5, 2019, T-Mobile issued a "Not in Good Standing" discipline to Wilkins.

65.     As an employee "Not In Good Standing," Wilkins was ineligible for promotions, education assistance, and national recognition programs, as well as internal transfers, annual bonus allocation, and compensation increases.

66.     One month later, on March 5, 2019, T-Mobile issued a coaching to Wilkins.

11

67. Two days later, on March 7, 2019, T-Mobile issued yet another coaching to Wilkins.

68. One week later, on March 14, 2019, T-Mobile issued an additional coaching to Wilkins.

69. A few weeks later, on April 2, 2019, T-Mobile issued one more coaching to Wilkins.

70. On April 10, 2019, Defendant terminated Wilkins' employment.

71. Defendant claimed that Wilkins was terminated for ongoing attendance and performance issues, since Defendant had not approved Wilkins' request for intermittent medical leave.

72. T-Mobile's explanation was pretext, designed to hide the true, unlawful reason for Wilkins' termination. Defendant terminated Wilkins because of her pregnancy and other medical issues, and her request for intermittent medical leave, in violation of Title VII and the ADA.

73. As a result of Defendant's unlawful action, Wilkins lost her job and income, and she lost her health benefits.

74. Defendant's decision to terminate Wilkins was made in willful, blatant and intentional disregard of and in violation of Wilkins' rights under Title VII and the ADA.

## COUNT I
## ADA – 42 U.S.C. 12101 *et seq.*
## Disparate Treatment
## (Plaintiff Eddings and Plaintiff Wilkins)

75.    Plaintiffs incorporate and re-allege the allegations contained within the preceding paragraphs of this Complaint as though fully set forth herein.

76.    All of the acts of Defendant's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of the Defendant.

77.    Plaintiffs suffered from depression and anxiety, and other medical conditions, as described above.

78.    During her employment with Defendant, Eddings' job performance met or exceeded Defendant's legitimate expectations.

79.    During her employment with Defendant, Wilkins' job performance met or exceeded Defendant's legitimate expectations.

80.    Each plaintiff was a qualified individual with a disability as those terms are defined by the Americans with Disabilities Act.

81.    Each plaintiff was suffering from a serious medical condition that had a significant impact on major life activities.

82.    Each plaintiff possessed the requisite skills to do her job, as she had done throughout her employment with Defendant.

83.     Each plaintiff continued to be capable of doing the essential functions of her job, as she had done throughout her employment with Defendant.

84.     Both plaintiffs told Defendant about their depression and anxiety and provided detailed descriptions of their disability through their physicians, and Defendant knew that Eddings and Wilkins were each an individual with a disability.

85.     Each plaintiff made requests for reasonable accommodations between January and March of 2019.

86.     Defendant terminated Eddings on March 12, 2019.

87.     Defendant terminated Wilkins on April 10, 2019.

88.     Defendant discriminated against Eddings because of her actual and/or perceived disabilities, heart disease, depression and anxiety, all medical conditions that limit major life activities, such as coronary and brain function and her mental and emotional health.

89.     Defendant discriminated against Wilkins because of her actual and/or perceived disabilities, depression and anxiety, all medical conditions that limit major life activities, such as brain function and her mental and emotional health.

90.     Defendant further retaliated against Eddings and Wilkins because of each plaintiff's request for reasonable accommodation and terminated them.

91.    Defendant's actions were done in willful violation of Plaintiffs' rights under the Americans with Disabilities Act.

92.    Defendant acted with malice and/or with reckless disregard for Plaintiffs' rights under the Americans with Disabilities Act when Defendant harassed and discriminated against each Plaintiff and when they terminated Eddings and Wilkins and thus further discriminated against them because of each Plaintiff's disability.

93.    Each Plaintiff is entitled to punitive damages.

94.    Defendant terminated Plaintiffs' employment because of their disability and thereby violated Plaintiffs' right to equal employment opportunity as protected by the ADA.

95.    Each Plaintiff has been damaged by Defendant's actions, including, but not limited to loss of employment, loss of compensation and employment related benefits.

96.    As a direct and proximate result of Defendant's actions, Plaintiffs have suffered, continue to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense including attorneys' fees, medical expense, consequential damages and other injury.

## COUNT II
## INTERFERENCE UNDER THE FMLA:
## (Plaintiff Eddings Only)

97.    Each of the preceding paragraphs is incorporated herein by reference.

98.    On March 6, 2019, Eddings had been employed with T-Mobile for twelve months, during which she had worked more than 1,250 hours.

99.    T-Mobile has more than 50 employees within a 75 mile radius of the City of Richmond.

100.    Eddings provided Defendant with sufficient notice that she would be out of work on FMLA-covered medical leave, and that she would return to work on or before July 31, 2019.

101.    As a matter of law, Eddings was entitled to reinstatement to her position or an equivalent position with the Defendant upon her return from her leave.

102.    Eddings was not reinstated to her position or an equivalent position with the Defendant. Instead, she was terminated six days after she became eligible to take FMLA leave.

103.    The acts and practices of Defendant complained of herein, including the termination of Eddings' employment during her FLMA-covered leave, were done as interference with Plaintiff's rights under the FMLA, in violation of 29 U.S.C. §§ 2614 and 2615(a)(1).

104.   The acts and practices of Defendant complained of herein were willful. Eddings is therefore entitled to liquidated damages under the FMLA.

105.   Plaintiff has been damaged by Defendant's actions, including, but not limited to loss of employment, loss of compensation and employment related benefits, loss of health insurance for Plaintiff and her baby, and litigation expense including attorney's fees.

**COUNT III**
**TITLE VII – GENDER/PREGNANCY DISCRIMINATION**
**(Plaintiff Wilkins Only)**

106.   Each of the preceding paragraphs is incorporated herein by reference.

107.   Wilkins, because of her gender and pregnancy, was denied terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

108.   Prior to taking discriminatory employment action against Wilkins, Defendant became aware of Wilkins' pregnancy.

109.   Wilkins suffered a miscarriage on December 9, 2019.

110.   Defendant became aware of Wilkins' miscarriage.

111.   Defendant discriminated against Wilkins because of her pregnancy/miscarriage, refused to grant medically necessary leave of absence, obstructed Wilkins' efforts of getting intermittent leave, and terminated her, all in violation of Title VII of the Civil Rights Act of 1964, as amended.

112.    Defendant's discrimination against Wilkins was an intentional or reckless disregard of her rights under Title VII of the Civil Rights Act of 1964, as amended.

113.    Defendant engaged in its discriminatory actions described above with malice, or with a reckless indifference to Wilkins' legal rights. Wilkins is therefore entitled to punitive damages for Defendant's actions alleged herein.

114.    Wilkins has been damaged as a result of Defendant's unlawful conduct. As a direct and proximate result of Defendant's conduct, Wilkins has suffered great humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, loss of income, loss of employment, loss of employee benefits, litigation expense including attorney's fees, and consequential damages including the loss of employment opportunities, business and development opportunities, and other injury.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs Janae Eddings and Franchon Wilkins, request judgment against Defendant as follows:

A.    For appropriate declaratory relief regarding the unlawful acts and practices of Defendant, pursuant to the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, and Title VII of the Civil Rights Act of 1964;

B.      For an award of compensatory damages to each Plaintiff against Defendant T-Mobile;

C.      For an award of punitive damages to each Plaintiff against Defendant T-Mobile;

D.      For pre-judgment and post judgment interest;

E.      For an award of back pay for violations of the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, and Title VII of the Civil Rights Act of 1964 against Defendant T-Mobile;

F.      For an award of liquidated damages to Janae Eddings in an amount to be determined at trial for willful violation of the Family Medical Leave Act;

G.      For an award of an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because Plaintiffs Janae Eddings and Franchon Wilkins were required to file suit to enforce their federally protected rights;

H.      For an award of incidental and consequential damages, actual attorney's fees and costs of this action, including expert witness fees; and

I.      For such other and further relief to which each Plaintiff may show herself justly entitled.

**TRIAL BY JURY IS REQUESTED**

**JANAE EDDINGS**
**and**
**FRANCHON WILKINS**

By Counsel

_____/s/ Tim Schulte_____
Tim Schulte (VSB # 41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
3 W. Cary Street
Richmond, Virginia 23220
(804) 644-9700
(804) 278-9634 [fax]
schulte@scs-work.com
shelley@scs-work.com
*Counsel for Plaintiffs*